UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF IOWA
DAVENPORT DIVISION

| | |
|---|---|
| JENNIFER RAE ZACH, and THE GUARDIANSHIP AND CONSERVATORSHIP OF JENNIFER R. ZACH, and MARJORIE CARSON-ZACH, Individually, as Mother and Next Friend of Jennifer R. Zach, and as Guardian and Conservator of Jennifer R. Zach, <br><br> Plaintiffs, <br><br> vs. <br><br> CENTOCOR, INC. and JOHNSON & JOHNSON, INC., <br><br> Defendants. | Case No. 3:05-cv-97  RP- TJS <br><br> DEFENDANTS' BRIEF IN SUPPORT OF THEIR MOTION TO STRIKE ALL EVIDENCE OF SUBSEQUENT LABELING |

**TABLE OF CONTENTS**

I.   PRELIMINARY STATEMENT ........................................................................................1
II.  ARGUMENT .....................................................................................................................2
     A.  THE EXCLUSION OF THE OCTOBER 2004 LABELING IS REQUIRED.................2
         1.  RULE 402 MANDATES EXCLUSION ................................................................2
         2.  RULE 407 MANDATES EXCLUSION ................................................................7
         3.  RULE 403 MANDATES EXCLUSION ..............................................................10
     B.  SUBSEQUENT WARNINGS ARE INADMISSIBLE TO PROVE CAUSATION .....12
     C.  SUBSEQUENT WARNINGS ARE INADMISSIBLE TO PROVE PUNITIVE DAMAGES..................................................................................................................12
III. CONCLUSION ................................................................................................................14

**I.      PRELIMINARY STATEMENT**

In response to Centocor's motion for summary judgment, plaintiffs have proffered evidence of Centocor's Remicade® labeling in effect after Ms. Zach last received the medicine. Plaintiffs' Memorandum in Resistance to Defendants' Motion for Summary Judgment ("Res.") (Res. at 3, 7-11, 14-15, 17, 19-20.) Centocor moves to strike all evidence of subsequent

1

Remicade® labeling from consideration here because it: (1) is inadmissible under the Federal Rules of Evidence as irrelevant evidence of subsequent remedial measures that impermissibly encourages decision on ultimate issues of fact on an improper basis and to the prejudice of Centocor; (2) is not admissible evidence of causation; and (3) is not admissible evidence to prove punitive damages.

## II.   ARGUMENT

### A.   THE EXCLUSION OF THE OCTOBER 2004 LABELING IS REQUIRED

Because "[t]he Federal Rules of Evidence govern the admissibility of evidence," district courts are obligated to evaluate evidence under the those rules. Sosna v. Binnington, 321 F.3d 742, 744 (8th Cir. 2003). The Federal Rules of Evidence require exclusion of Remicade® labeling in effect after April 2004 because: (1) such evidence is not relevant under Rules 401 and 402; (2) even if technically relevant, it is evidence of a subsequent remedial measure under Rule 407; and (3) if it has any probative value, it is outweighed by the danger of unfair prejudice and confusion of issues under Rule 403.

#### 1.   RULE 402 MANDATES EXCLUSION

Rule 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence," and Rule 402 states that "[e]vidence which is not relevant is not admissible." Fed. R. Evid. 401, 402. Together, these rules require the exclusion of evidence that is not relevant. See, e.g., Niver v. Travelers Indem. Co. of Illinois, 433 F. Supp. 2d 968, 994-95 (N.D. Iowa 2006).

**Irrelevant**

The subsequent labeling is not relevant to the determination of any material issue, could not have been reviewed by Ms. Zach's prescribing physician while Ms. Zach was being treated and is not relevant to the adequacy of Centocor's labeling.

First, because subsequent labeling is not evidence that can go to the determination of a material issue, see Nelson v. American Home Products, 92 F. Supp. 2d 954, 969 (W.D. Mo. 2000), it is not relevant under the definition in Rule 401.  See Fed. R. Evid. 401.

Second, subsequent labeling disseminated by Centocor is irrelevant because Ms. Zach's physicians, who Centocor was charged with warning, could not have seen the labeling while Ms. Zach was being treated with the medicine.  See, e.g., Arnold v. Riddell, Inc., 882 F.Supp. 979, 993 (D. Kan. 1995) (excluding subsequent warnings under Rule 402).

Third, subsequent labeling is not relevant to prove the inadequacy of earlier warnings because the adequacy of labeling is based on what is known or knowable at the time the labeling was created.  See Wright v. Brooke group Ltd., 114 F. Supp. 2d 797, 819 (N.D. Iowa 2000); see also Northern Trust Co. v. UpJohn Co., 572 N.E.2d 1030, 1038 (Ill. App. Ct.) (in product liability case the salient question was whether the defendant knew prior to the date of the injury that an illness was associated with the use of the drug; what the manufacturer knew or included in its warnings after the date of the injury " was irrelevant and only served to confuse and prejudice the jury"), appeal denied, 141 Ill. 2d 545 (1991), cert. denied, 502 U.S. 1095 (1992).  Moreover, plaintiffs' expert has said nothing to the effect that the October 2004 labeling should have or could have been issued sooner.  To the contrary, plaintiffs' expert deferred to the United States Food & Drug Administration ("FDA") as the "honest referee" on the content and

timing of label changes.  App. 66 (Deposition of Esam Dajani at 64:22-24.)[1]  And the evidence demonstrates that there was no reason or basis to modify the Remicade® prescribing information as it relates to neurological events prior to October 2004. App. 129, 136, 137.A1, 138-39 (Deposition of Stella Jones at 85:6-20, 92:20-24, 99:3-18, 168:20-22, 169:1-7.)  Without expert proof to controvert this evidence, the subsequent labeling is irrelevant to prove the inadequacy of labeling in effect when Ms. Zach received the medication.  See Benedict v. Zimmer, Inc., 405 F. Supp. 2d 1026, 1033 (N.D. Iowa 2005).

### No Impact on Dr. Aliye Uc

The October 2004 labeling added the statement "Discontinuation of Remicade® should be considered in patients who develop significant central nervous system adverse reactions" to the "Neurological Events" section under the "WARNINGS" heading.  Without any evidentiary support, plaintiffs assert this change, if made earlier, would have prevented Ms. Zach's injuries. (Res. at 10-11.)  The uncontroverted proof from Dr. Uc demonstrates, however, that this assertion is not accurate because a different warning would not have changes Dr. Uc's treatment of Ms. Zach.  As such, the subsequent labeling cannot be proof to meet plaintiffs' burden of showing proximate cause.  See Lovick v. Wilrich, 588 N.W.2d 688, 700 (Iowa 1999).

First, in accordance with the subsequent labeling, Ms. Zach's Remicade® therapy was stopped when her prescribing physician suspected a possible neurological problem.  App. 28 (Deposition of Aliye Uc ("Uc Dep.") at 109:14-25.)  Dr. Uc testified that she felt Ms. Zach's neurological exams were normal until May 2004. App. 18, 22, 25, 26, 27 (Uc Dep., 69:12-21,

---

[1] References are to the Appendix and Supplemental Appendix filed in Support of Defendants' Motion for Summary Judgment and Motion to Exclude the testimony of Dr. Esam Dajani.

82:14-18, 94:6-13, 100:6-14, 105:9-12.)  This dating of the onset of neurological symptoms was confirmed by Ms. Zach's primary care physician, Dr. Julianne Thomas, who noted that Ms. Zach's "symptoms of neurologic difficulty appear to have started around May 2004." Supp. App. 420 (Pediatric Center 0111-13.)  Being cautious, Dr. Uc did not give Ms. Zach a Remicade® infusion after April 2004 upon the first sign that something might be wrong, based on her years of medical training.  App. 27-29 (Uc Dep., 102:13-110:11.)  Moreover, in affirmatively stopping Ms. Zach's Remicade® therapy (id., 109:14-25), Dr. Uc did more than just "consider" discontinuing Remicade® as the subsequent labeling advises.

     Second, because she was always aware of the current medical information regarding Remicade® from other sources, Dr. Uc would not have treated Ms. Zach differently if she read the subsequent Remicade® labeling while Ms. Zach was receiving the medicine.  Dr. Uc explained that she was aware of the known medical information regarding Remicade® from many sources.  App. 11-12 (Id. at 41:16-22, 42:10-43:7.)  She already knew not to continue Remicade® if a patient developed neurological symptoms, which is why she routinely performed neurological examinations on her Remicade® patients.  App. 18, 47 (Id. at 69:12-21, 184:10-21.)  Moreover, despite her awareness that the Remicade® package insert warned regarding the possibility of "new onset" central nervous system disorders, Dr. Uc did not believe discussing this possibility with patients without pre-existing neurological disease was warranted because it is one of the "rare side effects." App. 32 (Id. at 124:3-8.)  Indeed, as a matter of practice, Dr. Uc does not warn patients of side effects that occur in less than one percent of patients.  App. 11 (Id. at 39:8-13.)

Third, in addition to what is in the October 2004 Remicade® labeling, Dr. Uc and Mrs. Zach's other treating physicians followed the instructions plaintiffs suggest (Res. at 7-11) should have been in the earlier labeling: Dr. Uc discontinued Ms. Zach's Remicade® at her first suspicion of neurological abnormalities, her physicians then conducted a thorough neurological exam, lumbar puncture, MRI of Ms. Zach's brain with gadolinium, prescribed and administered certain medicines and recommended a brain biopsy, which her family declined.  (Compare Res. at 7(a) with App. 28, Uc Dep. at 109:14-25; compare Res. at 7(b) with App. 27, Uc Dep. 102:16-104:13; compare Res. at 7(c) with App. 29, Uc Dep. at 113:11-13; compare Res. at 7(d) with Supp. App. 422, Mayo record; compare Res. at 7(e) with App. 31, Uc Dep. at 120:1-9; compare Res. at 7(f) with App. 30, Uc Dep. at 114:2-4.)  Because Ms. Zach's treating physicians did exactly what plaintiffs allege adequate labeling would have instructed, Centocor's labeling cannot be the proximate cause of Ms. Zach's injuries.  See Madsen v. American Home Prod. Corp., 2007 WL 738627 at *6-7 (E.D. Mo. Mar. 7, 2007) (applying Iowa law in granting pharmaceutical manufacturer summary judgment based on lack of proximate cause, despite inadequate product labeling).

## Not Otherwise Relevant or Connected by Expert Proof

The October 2004 labeling is not connected to anything in evidence in this case.  Dr. Dajani did not comment on it or use it in forming his opinions.  And because plaintiffs' warning claims must be based on expert testimony, plaintiffs' failure to have reliable expert proof regarding the October 2004 labeling makes the evidence not admissible.  See Benedict, 405 F. Supp. 2d at 1033.

## 2.     **RULE 407 MANDATES EXCLUSION**

Federal Rule of Evidence 407, which was amended in 1997 to encompass strict liability as well as negligence claims, states:

> When, after an injury or harm allegedly caused by an event, measures are taken that, if taken previously, would have made the injury or harmless likely to occur, evidence of the subsequent measures is not admissible to prove negligence, culpable conduct, a defect in a product, a defect in a product's design, or a need for a warning or instruction.  This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment.

Fed. R. Evid. 407 (1997).

The 1997 Advisory Committee notes to Rule 407 explain that the amendment "adopts the view of a majority of the circuits that have interpreted Rule 407 to apply to products liability actions." Id.

Rule 407 is regularly applied to exclude package inserts in effect after a plaintiff's last use of a medicine. See, e.g., Stahl v. Novartis Pharm. Corp., 283 F.3d 254, 270 n.10 (5th Cir. 2002) (when plaintiff used a pharmaceutical package insert issued after his alleged injury in his opposition to summary judgment, it could not be considered because "[s]uch evidence of subsequent remedial measures cannot be considered in evaluating whether the [earlier] warning was adequate"); Gerber v. Hoffman-LaRoche, Inc., 392 F. Supp. 2d 907, 919 (S.D. Tex. 2005) (finding that "Roche's expanded warning is undoubtedly a subsequent measure intended to remedy the problem [the plaintiff alleges]" in excluding a medicine's subsequent warning label under Rule 407); Lindsay v. Ortho Pharm. Corp., 637 F.2d 87, 93-94 (2d Cir. 1980); Werner v. Upjohn Co., 628 F.2d 848, 856-58 (4th Cir. 1980), cert. denied, 449 U.S. 1080 (1981).

Even before Congress amended Rule 407 to apply to strict liability claims, the Eighth Circuit applied Rule 407 to exclude post-prescription pharmaceutical labeling as a subsequent remedial measure because failure to warn claims, though technically strict liability claims, sound in negligence.  See DeLuryea v. Winthrop Labs., 697 F.2d 222, 229 (8th Cir. 1983) ("Rule 407 requires exclusion of evidence of subsequent remedial changes in [the pharmaceutical manufacturer's] warning literature.  The exhibits, documents, articles, package inserts, and Physician's Desk reference after [the date of plaintiff's last use of the medicine] were thus inadmissible").  Following the 1997 amendments to Rule 407, federal courts are obligated to exclude evidence of subsequent remedial measures in strict liability claims.  See, e.g., Berczyk v. Emerson Tool Co., 291 F. Supp. 2d 1004, 1016 n.14 (D. Minn. 2003) (noting that the 1997 amendments to Rule 407 "supersede" any precedent); Benedict, 405 F. Supp. 2d at 1035-36 (plaintiffs "cannot rely on any change in the design of the device to prove a design defect" because it is inadmissible as a subsequent remedial measure under Rule 407); Hammes v. Yamaha Motor Corp. U.S.A., Inc., 2006 WL 1195907 at *11 (D. Minn. May 4, 2006) (citing Rule 407 in finding that evidence of a product recall "is a subsequent remedial measure and would not be admissible to prove the existence of a product defect").

Because both Federal Rule of Evidence 407 and Eighth Circuit precedent require that subsequent labeling be excluded, there is no doubt that the Remicade® October 2004 package insert must not be considered in this case.

### **Exceptions to Rule 407**

Rule 407 allows admission of evidence of subsequent remedial measures when used to prove control or feasibility, when controverted, or to impeach. Fed. R. Evid. 407. None of those exceptions apply here.

One, Centocor does not contest control over any matter related to its October 2004 labeling. Two, feasibility becomes an issue only when one argues the impracticality of another course of action, not when one states that one's conduct was acceptable, given the knowledge available at the time. See Williams v. Security Nat. Bank of Sioux City, Iowa, 358 F.Supp.2d 782, 795 (N.D. Iowa 2005) (feasibility exception to Rule 407 does not apply unless "an opposing party controverts feasibility" by testifying that the remedial measure was not feasible at an earlier time). Centocor does not and has not argued that an earlier labeling change was not possible (though it might be rejected by FDA), just that it was not appropriate based on the available scientific information. Three, the "impeachment" exception does not apply here because there is nothing plaintiffs can impeach with the subsequent labeling. Federal courts are careful to prevent plaintiffs from circumventing the subsequent remedial bar by claiming that the evidence is being offered for impeachment. See, e.g., Sandoval v. Ritz Developers, Inc., 2006 WL 91606 at *7 (D. S.D. Jan. 13, 2006) (excluding evidence of subsequent remedial measures pursuant to Rule 407 and rejecting plaintiff's argument that the evidence could be used for impeachment). Four, there are no other reasons to legitimize plaintiffs' attempt to circumvent Rule 407 in this case. Subsequent labeling is inadmissible to prove anything regarding FDA views with respect to a medicine. See Gerber, 392 F. Supp. 2d at 919 ("Rule 407 would effectively be repealed in all prescription drug cases if subsequent labeling were admissible to show 'the FDA's ongoing concern'").

### 3. RULE 403 MANDATES EXCLUSION

Even if evidence is probative, a court has the discretion to exclude evidence if its potential for prejudice substantially outweighs any probative value. Fed. R. Evid. 403. The purpose of this rule is to prevent the admission of evidence with an "undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Fed. R. Evid. 403, Advisory Committee Note. See also Cummings v. Malone, 995 F.2d 817, 824 (8th Cir. 1993) (Evidence is unfairly prejudicial "when it would influence the jury to decide the case on an improper basis").

Evidence relating to subsequent labeling does not establish any of the elements of plaintiffs' causes of action. Instead of providing probative information on any issue, the introduction of this evidence only will confuse and mislead, to the substantial prejudice of Centocor. The admission of Centocor's subsequent labeling will be prejudicial because it impermissibly focuses on a "hindsight" analysis. In prescription medicine cases, courts evaluating the adequacy of warnings proceed under the disadvantage of having to focus on a single case, when the plaintiff claims that her personal tragedy could have been avoided by a more specific, detailed, prominent or forcefully worded warning delivered by different means. The focus on such a single case leads to the twin evils of judgment of hindsight and tunnel vision. The knowledge that some injury has occurred can easily lead the fact-finder to overstate the risk, ex-ante of such injuries generally, the relative significance of the risk in comparison to other risks that the manufacturer also must address, and the availability of reasonable means to avoid the risk, which only in hindsight seem obvious and simple to adopt.

The Federal Rules of Evidence recognize that evidence of subsequent remedial measures, such as the subsequent labeling here, implicates Rule 403 issues as well as triggering Rule 407's bar.  See 1997 Advisory Committee notes to Fed. R. Evid. 407 ("Evidence of subsequent measures that is not barred by Rule 407 may still be subject to exclusion on Rule 403 grounds when the dangers of prejudice or confusion substantially outweigh the probative value of the evidence").  Moreover, the Eighth Circuit mandates exclusion of evidence that is prejudicial, confusing or misleading, and allows courts broad authority to do so.  See Cummings, 995 F.2d at 823 (8th Cir. 1993) ("Under Rule 403, the court can and should exclude otherwise relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury"); see also Fortune Funding, LLC v. Ceridian Corp., 368 F.3d 985, 990 (8th Cir. 2004) (excluding a evidence subsequent to the relevant time frame under Rule 403 as confusing and potentially misleading).  Indeed, plaintiffs have made their intentions clear that they plan to use the evidence to suggest that the adequacy of Centocor's warnings be decided on an improper basis: "[I]f Defendant's truly claim that they had adequately warned doctors and patients, then why did they revise their label in October 2004 to warn of this very fact?"  (Res. at 11.)  Clearly plaintiffs want the adequacy of Centocor's warnings to be improperly adjudicated based on subsequent remedial measures, hindsight, and what was reasonably known at a later time than relevant.  Thus, plaintiffs' Resistance demonstrates why Rule 403 mandates exclusion of Centocor's subsequent labeling to prevent a decision on the ultimate issue of fact on an improper basis and to the prejudice of Centocor.  See Cummings, 995 F.2d at 824.

**B.     SUBSEQUENT WARNINGS ARE INADMISSIBLE TO PROVE CAUSATION**

Subsequent warnings are not admissible proof of causation between a medicine and an injury. In other words, plaintiffs' multiple references to the October 2004 labeling and the fact that it is different than the 2003 version cannot be considered as proof that Remicade® causes or is associated with neurological effects. See, e.g., Nelson v. American Home Products, 92 F. Supp. 2d 954, 969 (W.D. Mo. 2000) ("Changes to drug packaging inserts and letters from drug manufacturers that report possible adverse drug reactions…cannot be used as a basis for causation"); Lopez v. Wyeth-Ayerst Labs., Inc., 139 F.3d 905 (9th Cir. 1998) (explaining that "[an] FDA warning, therefore, cannot be relied upon as evidence of causation"); Newton v. Roche Labs, Inc., 243 F. Supp. 2d 672, 683 (W.D. Tex. 2002) (same); see also 21 C.F.R. § 201.57 (e) ("a causal relationship need not have been proved" for approval of a warnings in prescribing information); Soldo v. Sandoz Pharms. Corp., 244 F. Supp. 2d 434, 538 (W.D. Pa. 2003) [courts have] clearly warned that [a case report-based drug] association does not equate to causation") (citing Merrell Dow Pharm., Inc. v. Havner, 953 S.W.2d 706, 718, cert. denied, 523 U.S. 1119 (1998)); Peters v. Astrazeneca LP, 2007 WL 648188 at *4 (7th Cir. Jan. 17, 2007) (Even if [warnings in a medicine's package insert] were suggestive of a correlation between [the prescription drug] and [the adverse event]…a correlation alone is not evidence of causation"); Norris v. Baxter Healthcare, 397 F.3d 878, 885 (10th Cir. 2005) ("A correlation does not equal causation").

**C.     SUBSEQUENT WARNINGS ARE INADMISSIBLE TO PROVE PUNITIVE DAMAGES**

The proof required for submission of a punitive damage claim is high, and plaintiffs cannot use evidence of Centocor's subsequent labeling to avoid summary judgment on that claim. See, e.g., Iowa Code § 668A.1(1)(a); Cameron v. DaimlerChrysler Corp., 2005 WL 2674990 at *9 (E.D. Ky. 2005). Plaintiffs' attempted incorporation of the October 2004 labeling by reference to an earlier 2001 manuscript (Res. at 3, 7-11, 14-15, 17, 19-20) also is unavailing because knowledge of product injuries that may have other explanations cannot implicate punitive damage liability. See, e.g., Zeigler v. Fisher-Price, Inc., 302 F. Supp. 2d 999, 1010 (N.D. Iowa 2004) (under Iowa law, knowledge of product complaints that could have explanation other than product defect does not amount to "clear, convincing and satisfactory evidence to support a finding of willful and wanton conduct" necessary for submission of punitive damages claim); Stranger v. Smith & Nephew, Inc., 2006 WL 1237140 at *3 (E.D. Mo. 2006) (granting medical device manufacturer summary judgment on punitive damages because submission of punitive damages could not rest on plaintiffs' allegations regarding defendant's negligence in not giving a warning).

The 2001 manuscript upon which plaintiffs dwell was part of an open discussion about Remicade®'s labeling, in which FDA was the "honest referee." App. 66 (Dajani Dep. at 64:22-24.) This process of open discussion between FDA and a pharmaceutical manufacturer is ordinary in the context of prescription medication. App. 63, 66 (Id. at 52:4-7, 52:14-21, 63:9-65:11.) Evidence of a subsequent label that is a product of continued open discussion and investigation does not rise to the level of admissible evidence for a punitive damages claim. See, e.g., Drabik v. Stanley-Bostitch, Inc., 997 F.2d 496, 511 (8th Cir. 1993) (summary judgment on punitive damages granted because "disagreement, either internal or industry-wide, about a

product's degree of safety does not in itself compel punitive damages"); Mercer v. Pittway, 616 N.W.2d 602, 617 (Iowa 2000) (punitive damages unavailable when there is a "reasonable disagreement over the relative risks" of a product). Regarding the Remicade® labeling, plaintiffs' expert has explained:

> I knew there was a concern about a labeling issue, but I got the impression at one reading the internal company documents they were having a hard time to define if it's really truly encephalopathy or leukoencephalopathy and really drug related or non-drug related. There were much discussions going on. To put a label on, how to put a label on and what to say. And that's understandable, you know, because it is an issue that cannot be synthesized in a vacuum.

(Dajani Dep. at 53:24-54:13.) Because there can be no doubt that Centocor engaged in an open dialogue with FDA about concepts that plaintiffs' expert testified are subject to "understandable" debate, evidence of Centocor's subsequent labeling cannot be considered in evaluating whether plaintiffs met their burden of proof on their claim for punitive damages.

### III.   CONCLUSION

For all of the foregoing reasons, Centocor respectfully requests that its motion to strike evidence of Centocor's subsequent labeling be granted.

      /S/ NANCY J. PENNER
ROBERT D. HOUGHTON    AT0003739
NANCY J. PENNER    AT0006146
      for
SHUTTLEWORTH & INGERSOLL, P.C.
500 Firstar Bank Bldg., P.O. Box 2107
Cedar Rapids, IA 52406
PHONE:    (319) 365-9461
FAX:    (319) 365-8564

                    John Winter
                    Patterson Belknap Webb & Tyler LLP
                    1133 Avenue of the Americas
                    New York, New York 10036
                    PHONE:    (212) 336-2000
                    FAX:        (212) 336-2222
                    ATTORNEYS FOR DEFENDANTS CENTOCOR
                    and JOHNSON & JOHNSON, INC.

Copy to:
James L. Pray
Brian P. Rickert
Rebecca A. Brommel
BROWN, WINICK, GRAVES, GROSS
  BASKERVILLE and SCHOENEBAUM, P.L.C.
666 Grand Avenue, Ste. 2000
Des Moines, IA  50309-2510
*Attorney for Plaintiffs*

---

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of this document was served upon counsel of record for each party to the action in compliance with FRCP 5 on <u>March 28, 2007</u> **by:**

[X] Electronically via ECF for ECF registrants
[ ] U.S. Mail _____
[ ] Fax _____
[ ] Fed Ex _____
[ ] Hand Delivered _____
[ ] other _____

   **/s/ C. McGovern**